# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TINA HERNANDEZ, as special adm'r for the estate of Ted W. Hernandez,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF CHICAGO, OFFICER ROBERT GOINS, and UNKNOWN CHICAGO POLICE OFFICERS,<br><br>Defendants. | Case No. 16 C 8875 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tina Hernandez sued the City of Chicago, Officer Robert Goins, and unknown Chicago Police Department officers on behalf of Ted Hernandez, after Goins fatally shot him. A jury found in favor of the defendants. Hernandez has moved for a new trial.

## Background

On December 28, 2007, Goins, a Chicago Police Department officer, arrived at Ted Hernandez's residence in response to a 911 call. Ted Hernandez suffered from mental illness. After Goins arrived, he encountered Ted Hernandez on the roof of the residence. According to Goins, Ted Hernandez approached him with a knife, ignoring his command to stop, and Goins shot him. Ted Hernandez died from his wounds.

Tina Hernandez sued Goins, alleging excessive force, and the City of Chicago, alleging an unconstitutional policy or practice under *Monell* and wrongful death. (From hereon, for sake of brevity, the Court refers to Tina Hernandez by her surname and Ted

Hernandez by his full name.) During closing arguments, the City's attorney made multiple misstatements of law and evidence to which Hernandez objected and, eventually, moved for a mistrial. The Court did not rule on the motion at the time and thus effectively denied it. The jury found in favor of the defendants on each claim. Hernandez has moved for a new trial.

## Discussion

To obtain a new trial under Federal Rule of Civil Procedure 59(a), Hernandez must show that "the jury's verdict resulted in a miscarriage of justice or [that] the verdict, on the record, cries out to be overturned or shocks [the Court's] conscience." *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006). Hernandez argues that a new trial is warranted because defense counsel, during closing argument, misstated the facts and law and made an unduly prejudicial argument. The Court applies the same two-step process for each of these purported errors: Hernandez must show (1) an error occurred and (2) the error prejudiced her case. *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002) (citation omitted).

An error of this sort is less likely to be considered prejudicial if it was followed by a curative instruction. *Christmas v. City of Chicago*, 682 F.3d 632, 641 (7th Cir. 2012). When considering the effect of a curative instruction, the Court evaluates the timeliness and effectiveness of the instruction, as well as its significance when viewed in the context of the record as a whole. *Id.* (citing *United States v. Humphrey*, 34 F.3d 551, 557 (7th Cir. 1994)).

All of the purported misconduct cited in Hernandez's motion for a new trial occurred during closing argument by defense counsel. The Seventh Circuit has

2

repeatedly emphasized that movants seeking a new trial based on misconduct during closing arguments must climb a very steep hill to obtain relief. *See, e.g., Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013) (improper statements in closing must present a "high level of impropriety and prejudice" to justify a new trial); *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011) ("We have stated repeatedly that improper comments during closing argument rarely amount to reversible error.").

Before reviewing the errors that Hernandez identifies, the Court first notes its difficulties with Hernandez's briefs. In the memorandum supporting her motion for a new trial, Hernandez presents long, unedited excerpts of the transcript—one such excerpt consumes the entire third page of her brief—and appends cursory statements that the excerpt was a material misstatement of law or fact. She has essentially left it to the Court to try to figure out the basis for her contentions.

**I.  Misstatements of law**

First, Hernandez argues that one of the City's attorneys, Barrett Boudreaux of Hale Law LLC, misstated the law during closing argument by stating that Goins was justified in shooting Ted Hernandez merely because he was holding a knife. (Here, the Court reviews both the first and fourth purported misstatements of law that Hernandez identified, as they refer to the same exchange between the litigants and the Court. *See* Def.'s Resp. to Pl.'s Mot. for New Trial at 11.)

In providing expansive quotations of the transcript to the court, Hernandez does not clearly indicate which portion of counsel's argument she contends suggested that Goins was justified in shooting Ted Hernandez simply because he was holding a knife. Upon review of the record, the Court identified the following passage as the argument

3

that Hernandez probably intended to challenge on this basis:[1]

> And if you believe that Officer Goins did reasonably fear for his life at the time he fired his weapon, he is justified in that use of force. And, of course, a knife is a deadly weapon, and because expert Jeffrey Noble could not think of a specific example of an offender killing an armed police officer with a knife does not mean it doesn't happen. He told you it does happen. *You can kill someone with a knife, a screwdriver, a box cutter which is one inch high.*

D.E. 169, Pl.'s Ex. 1 at 26 (emphasis added). The italicized portion of the attorney's argument is the most likely basis for the plaintiff's argument. Viewed in context, however, counsel does not appear to have been arguing that simply holding a knife or screwdriver is sufficient to permit deadly force by a police officer. Rather, the context of counsel's argument makes it apparent that she was contending that Ted Hernandez's wielding of a knife caused Goins to reasonably fear for his life, thus justifying his use of deadly force. And even if the jury might have understood defense counsel the way Hernandez characterizes the argument, the Court gave an instruction that adequately cured any prejudice. The instruction was timely, as it followed the alleged misstatement within a minute after it was made, and it was effective, as the Court unambiguously advised the jury that "[i]t is not the case that anytime someone has a weapon in their hand that an officer may use deadly force. . . . There is nothing in that instruction that says that anytime somebody is wielding a knife . . . that an officer can use deadly force. That is not the law." *Id.* at 27-28. The Court also read from the jury instruction on evaluating an officer's use of deadly force. *Id.* at 27. For these reasons, the alleged misstatement by the City's counsel does not entitle Hernandez to a new trial.

---

[1] To the extent that Hernandez also challenges the City's assertion that Goins was "sued for responding to a 911 call," D.E. 169, Pl.'s Ex. 1 at 27, the Court overrules this argument, as the argument was not so prejudicial as to warrant a new trial.

4

Hernandez argues that attorney Boudreaux misstated the law in a second statement that the Court finds is better analyzed as involving two separate issues. Specifically, Hernandez argues that attorney Boudreaux made an improper argument by stating that the City was named as a defendant only because of its deep pockets. *Id.* at 20 ("Why do you think the plaintiff is bringing this case, the second claim against the city at all? The nameless, faceless target with the deep pockets. 4.9 million dollars, that's why."). The Court concluded that the "deep pockets" argument was improper. The fact is that Goins was subject to indemnification by the City under 745 ILCS 10/9-102 because his actions took place during and within the scope of his employment at a Chicago police officer. Thus in fact Hernandez *did not* need to name the City to ensure payment of a judgment. Defense counsel's argument was false and thus misleadingly and improperly took advantage of the fact that Hernandez could not introduce evidence regarding the City's indemnification of Goins. *Id.* at 21.

The City urges the Court to find that the statement was not erroneous, arguing under *Townsend v. Benya*, 287 F. Supp. 2d 868 (N.D. Ill. 2003), that the probative value of the City's argument should be weighed against its prejudice under Rule 403. *Id.* at 874. But this would not change the outcome, as the City's argument lacked any probative value at all: because Goins was indemnified, his pockets were just as deep as the City's. The argument was improper.

The Court, however, gave a prompt curative instruction. Immediately after a brief sidebar, the Court advised the jury that "the comment a little bit earlier by the attorney for the City of Chicago that the city is being sued because it's a deep pocket, that's an [inappropriate] argument. *It's not correct* and it's stricken and you are directed to

5

disregard it." D.E. 169, Pl.'s Ex. 1 at 23 (emphasis added). Any prejudice Hernandez suffered from the City's improper statement was cured by the Court's instruction.

Hernandez also argues that attorney Boudreaux misstated the law by suggesting that the excessive force claim, brought against Goins, was inconsistent with the *Monell* claim, brought against the City of Chicago. *Id.* at 20 ("And you see how those claims cannot be reconciled."). The Court concluded that this statement was an erroneous statement of law, as the instructions stated that Hernandez was required, in the first element of the second claim, to prove "[u]nreasonable force was used against Mr. Hernandez, as defined in the instructions for the plaintiff's first claim." D.E. 144, Def.'s Ex. B at 11. The two claims not only were not inconsistent; they went hand in hand, as the *Monell* claim effectively incorporated the excessive force claim. Although the City now tries to spin this by contending that it was only arguing that Hernandez employed different *theories* of liability for the individual and *Monell* claims, that is not what attorney Boudreaux said: she stated that the claims themselves could not be reconciled. D.E. 169, Pl.'s Ex. 1 at 20. Again, however, the Court gave the jury a prompt and effective curative instruction, first telling the jury that it was "to follow my instructions, not interpretations of them," and then, after a sidebar, telling the jury that "the comment about the inconsistency between the claim under [c]laim 1 and the claim under claim 2 *is wrong*. The instructions that I am giving are my instructions. You are to follow those instructions, *not [the] incorrect way in which they have been interpreted*[,] and that argument is disregarded as well." *Id.* at 20, 23 (emphasis added). Hernandez is not entitled to a new trial based on these arguments, despite their impropriety.

Third, Hernandez argues that attorney Boudreaux misstated the law by arguing

6

that only a subset of the evidence introduced should be considered for the excessive force claim.  Specifically, Hernandez challenges the following argument:

> He hid himself in a recessed corner of the roof and waited for the officers to come around that skylight.  He waited in hiding and silent armed with that knife and when the officers got close to him, he jumped up and immediately advanced upon them.  *And it is here where the analysis begins for the excessive force claim against Officer Goins.*

*Id.* at 24 (emphasis added).  Hernandez contends that this misstatement of the law caused the jury to disregard evidence of the events that occurred before Goins entered the roof.  Defendants contend that counsel did not incorrectly state the law because she was simply asking the jury to focus on Goins's perspective, consistent with the proposition that an officer's use of force must be evaluated from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017).  This proposition, however, does not create some sort of an artificial dividing line that renders immaterial anything but whatever happened a few seconds before the use of force; *all* the information the officer had at the time is considered.  *See id.* at 1546-47.  That aside, however, defense counsel's statement, even if it was incorrect, did not unfairly prejudice Hernandez.  After Hernandez objected, the Court stated that the jury was "to consider all of the evidence in deciding the claims, not just a part of the evidence."  D.E. 169, Pl.'s Ex. 1 at 24.  This instruction was timely and it was effective, as the Court reemphasized the appropriate standard for evaluating evidence in an excessive force claim.

**II.     Misstatements of fact**

First, Hernandez argues that Goins's attorney misstated the evidence by describing Ted Hernandez as a "very ill" man.  *Id.* at 17.  Hernandez argued this

7

misstatement was improper because (1) counsel violated a motion *in limine* barring statements about Ted Hernandez's physical health, (2) the assertion was made without evidence in the record, and (3) the misstatement was exacerbated when counsel also improperly elicited evidence of Ted Hernandez's cirrhosis.

The Court understands the statement in question as a reference to Ted Hernandez's mental health, not his physical health. Evidence was introduced regarding his mental health; this was, as defendants note, was an issue that pervaded the trial. Considered in this context, the jury likely understood the argument as referencing Ted Hernandez's mental health, not his physical health. Goins's attorney did not make any statement that the jury would have understood as a reference to his physical health generally or to cirrhosis in particular. In any event, the Court sustained an objection to the statement and struck it from the record. *Id.*

Second, Hernandez argues that the City's attorney misstated the evidence by arguing that Ted Hernandez exchanged a smaller knife for a larger knife before encountering the officers. *Id.* at 24. Hernandez argues that no witness testified to this fact, and the City could not justifiably infer it from the evidence. The City disagrees, pointing to testimony by a witness who heard him rummaging through a silverware drawer before he encountered the officers and testimony suggesting that Ted Hernandez wielded more than one knife during the night. Hernandez does not contest this in her reply brief. The Court finds that the City's attorney did not misstate the evidence.

Third, Hernandez contends that attorney Boudreaux misstated the evidence when she characterized an opinion offered by Hernandez's expert witness, Chet

Epperson: "Mr. Epperson still had the nerve to tell you . . . it was unconstitutional for the City of Chicago not to have 13,000 tasers in 2007." *Id.* at 36. Hernandez asserts that Epperson never testified to this and, as a result, Hernandez was prejudiced.

Even if it was a misstatement, Hernandez fails to explain *why* it would be prejudicial for the jury to believe that Epperson had testified in the way the City claimed. After all, Hernandez's argument for *Monell* liability involved the City of Chicago's failure to use tasers more extensively, so it would seem that an expert testifying that the failure to provide tasers was a constitutional violation would aid, not harm, the plaintiff's position. Assuming for purposes of discussion that the misstatement was prejudicial, the Court concludes that it does not warrant a new trial. After Hernandez objected to the City's characterization of Epperson's testimony, the Court sustained the objection. *Id. See also Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012) (sustaining an objection helps cure the prejudice of an improper comment). The Court concludes that the City's characterization of Epperson's expert testimony was not so prejudicial that a new trial would be warranted.

### III.    Unduly prejudicial argument

Finally, Hernandez contends that the City's attorney offered an unduly prejudicial and improper argument when she stated: "That is what the burden of proof is, the concept that awarding money damages is tied to legal liability, not just sympathy. If cases were based on sympathy, the defendants would never have a chance and there would be lines miles long." D.E. 169, Pl.'s Ex. 1 at 38. Hernandez contends this argument is improper because the jury would believe, as a factual matter, that her case was of a type that caused long lines at the courthouse. The City argues that, in making

9

the statement, its attorney was emphasizing the nature of the jury's burden to decide the case fairly and impartially, not on sympathy. Even if this were an unduly prejudicial argument, the Court cured any prejudice: it sustained Hernandez's objection to the "lines miles long" comment and directed the jury to disregard it. *Id.*

**IV.     Cumulative error**

Finally, Hernandez argues that the cumulative effect of the misconduct during closing arguments warrants a new trial. "Trial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). *See also Sanchez v. City of Chicago*, 880 F.3d 349, 361 (7th Cir. 2018). To prevail upon a cumulative error argument, Hernandez must show that more than one error occurred at trial—which she has shown—and that the effect of these errors denied her a fundamentally fair trial. *Alvarez*, 225 F.3d at 824. To determine whether Hernandez was denied a fundamentally fair trial, the Court must examine the errors in the context of the entire record, the remedial measures the Court adopted, and the strength of the other party's case. *Id.* at 825. Hernandez is only entitled to a new trial if, at the end of this analysis, the Court is "firmly convinced that but for the errors, the outcome of the trial probably would have been different." *Id.* (citations omitted).

Hernandez identifies three statements that the Court has found were erroneous: arguments about the City's "deep pockets," the purported inconsistency between Hernandez's claims, and the scope of evidence that the jury may consider in an excessive force claim. But each erroneous statement involved a different point, making it less likely that the errors, taken together, would produce cumulative error. *Id.* (a court

10

should consider the "interrelationship . . . and [the] combined effect [of the errors]"). Moreover, the errors all arose during closing arguments, and the Seventh Circuit is "loath[] to find that improper comments made during closing arguments rise to the level of reversible error." *Smith*, 707 F.3d at 812. Moreover, after each error, the Court promptly took curative measures, including striking improper arguments, admonishing the jury to follow the instructions, and reading the instructions to the jury. Finally, the City and Goins's defense of Hernandez's claims, though not overwhelming, was certainly not marginal; there was significant evidence to support the contention that Goins shot Ted Hernandez only after he advanced on Goins wielding a deadly weapon. For these reasons, he Court is unpersuaded that, but for the City's errors, the outcome of the trial would have been different.

## Conclusion

For the foregoing reasons, the Court denies plaintiff's motion for a new trial [dkt. no. 139].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 18, 2018